MANHATTAN TRUST CO. v. SIOUX CITY CABLE RY. CO. (HUNGERFORD, Intervener).

(Circuit Court, N. D. Iowa, W. D. May 28, 1895.)

STREET RAILROADS—LIEN OF JUDGMENT FOR PERSONAL INJURIES—IOWA STATUTE.
    The Iowa statute (McClain's Code, § 2008), making a judgment against any railway corporation, for injury to person or property, a lien superior to that of mortgages on its property, does not apply to street-railway corporations.

This was a suit by the Manhattan Trust Company against the Sioux City Cable Railway Company to foreclose a mortgage. C. A. Hungerford intervened, claiming priority over the mortgage for a judgment recovered by him.

Swan, Lawrence & Swan, for complainant.
T. F. Bevington and P. A. Sawyer, for intervener.

SHIRAS, District Judge. The question presented by the petition of the intervener is whether a judgment, rendered against a street-railway company for personal injuries, has priority over the lien of a mortgage upon the corporate property; or, in other words, are street railways to be included within the words "any railway corporation," as the same are used in section 2008, McClain's Code Iowa, which declares that "a judgment against any railway corporation for any injury to any person or property, shall be a lien within the county where recovered on the property of such corporation, and such lien shall be prior and superior to the lien of any mortgage or trust deed executed since the 4th day of July, A. D. 1862"? It cannot be questioned, on the one hand, that a company engaged in operating street cars upon lines of rails laid down along the streets of a town or city, for the transportation of passengers, is, in one sense, a railway corporation, nor, upon the other hand, that there is a marked and recognized distinction between street-railway lines and those engaged in the general passenger and freight traffic of the country. This distinction is well stated by Judge Caldwell, in Williams v. Railway Co., 41 Fed. 556, wherein it is said:

"The difference between street railroads and railroads for general traffic is well understood; the difference consists in their use, and not in their motive power. A railroad, the rails of which are laid to conform to the grade and surface of the street, and which is otherwise constructed so that the public is not excluded from the use of any part of the street as a public way; which runs at a moderate rate of speed compared to the speed of traffic railroads; which carries no freight, but only passengers, from one part of a thickly popu-

lated district to another, in a town or city, and its suburbs, and for that purpose runs its cars at short intervals, stopping at the street crossings to receive and discharge its passengers,—is a street railroad, whether the cars are propelled by animal or mechanical power. The propelling power of such a road may be animal, steam, electricity, cable, fireless engines, or compressed air, all of which motors have been, or are now, in use for the purpose of propelling street cars."

The fact that the form of power used for the propulsion of the cars is not now held to be the controlling factor in determining whether a given line of railway is to be deemed a street or general traffic line is emphasized by the act of the general assembly of the state of Iowa approved April 24, 1890, which enacts that:

"All cities and incorporated towns, including cities acting under special charters, shall have the power to authorize or forbid the construction of street railways within their limits, and may define the motive power by which the cars thereon shall be propelled, including animal, electricity, steam, or other power, whether now known or hereafter utilized."

Without further elaboration, it will be assumed that there is a marked distinction and difference between street-railway lines and corporations and general traffic lines and corporations, and, as it is not questioned that the Sioux City Cable Railway is a street railway, the point in dispute resolves itself into the question whether, in the legislation of the state, the terms, "railroad or railway lines, or corporations operating railroads or railways," should be held to include street railways, when the latter class is not specifically named. The section of the Code already cited, declaring that judgments against any railway corporation for injuries to persons or property shall be prior and superior to the lien of any mortgage or trust deed executed since the 4th day of July, 1862, forms part of chapter 5, tit. 10, McClain's Code Iowa, which includes the legislation in regard to railways. An examination of the 147 sections of this chapter shows that in none of them are street railways named, and at least 137 thereof show affirmatively, by the nature of the provisions thereof, that it was not the intent to include street railways therein, and it is therefore the fair inference that the entire chapter was intended to apply only to the other class of railways. Thus in this chapter it is enacted that every corporation operating a railway shall, at all highway crossings, construct cattle guards, and erect signboards; must connect its line by means of a Y with all intersecting lines, and receive and draw the cars of all connecting lines; must stop not less than 200 feet from any other line of railway intersected or crossed; and must give signals, by bell or whistle, beginning at least 60 rods from all highway crossings, of the approach of all trains. The application of these and similar provisions of this chapter would be practically a prohibition of the running of street cars. The chapter further provides for the assessment of railways by the state executive council; provides for the establishment of a board of railway commissioners, and declares its powers and duties; and it has never been claimed that these provisions extend to street railways. The contention that the provisions of chapter 5, tit. 10, of the Code, are not applicable to street railways, finds support in the fact that in other chapters of the Code, wherein the words "railways or

railroads" are used, we find coupled therewith the words "street railways," whenever the latter are intended to be included. Thus, in section 623, it is declared that cities and incorporated towns "shall also have the power to authorize or forbid the location and laying down of tracks for railways and street railways on all streets," etc.; and in construing this section in the case of Sears v. Railway Co., 65 Iowa, 742, 23 N. W. 150, the supreme court of Iowa said:

"In the grant of power, both railways and street railways are mentioned. There is, then, a statutory implication that they are not the same, but that there is a material difference between the two; and that a grant of the power to authorize one would not necessarily include the other. The limitation or qualification of such power, it will be observed, is thus expressed in the statute: 'But no railway track can thus be located and laid down' until the damages to the abutting owner is ascertained and compensated. As thus used in the statute, does 'railway track' mean or include 'street railway track' operated by horse power? We think not. 'Railway track,' as generally understood, means only a track on which steam is used as the motive power, and it will be presumed that the general assembly used such words in that sense, unless the context or subject-matter contemplated by the statute requires that a different meaning than that in ordinary use should be adopted."

The distinction in question is also recognized in section 2492, Mc-Clain's Code, wherein it is provided that inflammable oils shall not be burned in any lamp, vessel, or stationary fixture, "in any passenger, baggage, mail, or express car on any railroad * * * nor in any street railway car." There are a number of other sections in the Code which deal with the subject of street railways in express terms, and it is thus made clear that in the legislation of the state there is recognized to be a marked distinction between corporations engaged in the transportation of passengers and freight over lines of railway extending beyond the limits of cities and towns, which are not subject, except in minor matters, to any control by the city authorities, but are governed and controlled by the general laws of the state, and corporations created to construct and operate lines of railway in city and town streets, and which are largely, as to location, mode of operation, rates of fare, and the like, subject to the control of the city or town authorities. It cannot be denied that there is, in fact, a distinction between the two kinds of railways, and an examination of the statutes of the state shows that such a distinction is recognized in the legislation of the state, and that in general the term "railroad or railway" is used to designate the former class, and the words "street railway or railroad" the latter. From this it follows that, unless the context or subject-matter of a particular statute shows the contrary, the presumption is that the legislature did not intend to include street railways in the general term "railroad or railway." This is the rule given us in Sears v. Railway Co., 65 Iowa, 742, 23 N. W. 150, and is not inconsistent with the decision of the supreme court in City of Clinton v. Clinton & L. H. Ry. Co., 37 Iowa, 61, wherein it was, in effect, held that a corporation engaged in operating a horse railway through, between, and in the cities of Clinton and Lyons was not a street railway, and therefore came within the class designated in the general right of way act, then forming part of chapter 55, art. 3, Revision. In Freiday v. Transit Co. (Iowa) 60 N. W. 656, the

same rule s given, in effect, and thus we find that in the legislation of the state, and the judicial decisions based thereon, the words "railroad or railway" do not ordinarily include street railways.

So far the question has been considered as though all the provisions of chapter 5, tit. 10, McClain's Code, had been adopted at one time by the legislature, whereas, in fact, they were not, and therefore it can be properly urged that regard must be had to the act which first adopted into the legislation of the state the provisions of the section under consideration; for if it should appear from the terms of that act, as it passed the legislature, that it was intended to include street railways within its provisions, such legislative intent would not be changed or defeated because the section was subsequently codified as part of chapter 5, tit. 10. The act in question was passed by the ninth general assembly, being approved April 8, 1862. and contains 11 sections, the first of which provides that each railroad company shall, when completed, make report to the legislature stating the amount expended in constructing the road, and for the equipment thereof, stating the length of the road, the number of planes on it and their inclination, the greatest curvature, the average width of grade, and the number of ties to the mile. The second section provides that in the month of September each company shall fix its rates of fare for passengers, and for the transportation of timber, wood, coal, and merchandise, and shall post such established rates in its depots. Sections 3, 4, 5, and 6 provide for fencing the railroad, and declare the liability for stock killed at points where the right to fence the road exists. Sections 7 and 8 declare that every railroad company shall be liable for all damages sustained by any person, including employés, in consequence of the negligence of the parties operating the road, and that service may be had on any station or ticket agent; and section 9 provides that any judgment against any railroad company, for injury to person or property, shall be a lien within the county, and shall be prior and superior to the lien of any mortgage or trust deed executed after the date of the act. Section 10 makes it the duty of every land grant railroad to transport, in time of war, troops and munitions of war free of charge. Section 11 repeals all conflicting acts.

It is clearly apparent that, of these sections, at least nine have no application to street railways, and why, therefore, should it be held that the other two, to wit, sections 7 and 9, were intended to include street railways, when they are not named therein, and the same words, to wit. "railroad company," are used in these sections as are employed in the other nonapplying sections? Upon what theory can the court rightfully enlarge the meaning of the words "railroad company" as used in sections 7 and 9 over the plain construction applicable to these same words when used in the other sections of the statute? There is certainly nothing in the language of these sections, or in the context, that gives support to the contention that the legislature intended these sections to apply to a class of corporations not included in the other sections of the act. The argument that sustains the proposition that section 9 of the act of April 8, 1862, or its substitute, to wit, section 2008 of McClain's Code, in-

cludes street railways, would apply with equal force to section 7 of the act of 1862, or its substitute, to wit, section 2002 of McClain's Code, which declares the liability of every corporation operating a railway for all damages sustained by any person, including employés, in consequence of the negligence of the agents or servants of the company in the operation of the road; and yet it is clear that the legislature of the state did not so regard it, for the eighteenth general assembly, in the second section of chapter 32 of the act passed by it, expressly enacts that street-railway companies "shall also be liable for all damages sustained by any one, resulting from the carelessness of its officers, agents or servants, in the construction or operation of its railway," which enactment would not have been necessary if street railways were included in the previous legislation now codified as section 2002 of McClain's Code.

The conclusions reached are that, as there is in fact a marked distinction between railroads used in the furtherance of the general passenger and freight traffic of the state and those used for street purposes only, we should naturally expect to find in the legislation of the state provisions applicable to the one class which are not applicable to the other; that an examination of the statutes of the state shows that such difference is recognized therein; that chapter 5, tit. 10, McClain's Code, is intended to embrace the provisions applicable to companies engaged in the general passenger and freight traffic; that, as that is the general purpose of the chapter, the court is not justified in excepting out of it one or two sections, and holding that they include also street railways, when the latter are not specifically named therein, and there is nothing in the context of the chapter or in the text of the original act of 1862 which shows the legislative intent to include street railways therein; that the adoption of other sections of the statute, not included in said chapter 5, which authorize the construction and operation of street railways under the control of the city or town, with special provisions in regard to right of way, and liability for injuries caused to others, shows clearly that the legislature did not intend to include street railways within the provisions of chapter 5, tit. 10, and that the court cannot so include them, upon the argument that the proper protection of the people requires the application of the same rule to both classes of corporations, it being for the legislature to give force to this argument, if it deems it advisable so to do. I therefore hold that the claim of the intervener, while valid against the defendant company, is not superior or paramount to the mortgage lien held by the complainant in trust for the bondholders.