The Chicago & Northwestern Railway Company, Appellant, vs. Oshkosh, Algoma & Black Wolf Railroad Company, Respondent.

*May 15 — June 21, 1900.*

*Railroads: Incorporation to carry passengers only: Eminent domain: Condemnation of land: Construction of statutes: "Or" construed "and."*

1. Sec. 1820, S. & B. Ann. Stats. (authorizing the formation of corporations for " constructing, maintaining and operating railroads for public use in the carrying of persons *or* property " ), does not authorize the formation of a railroad corporation for the purpose of carrying persons only, the intention being, in view of the other statutory provisions relating to railroads, that corporations organized

Chicago & Northwestern R. Co. vs. Oshkosh, Algoma & B. W. R. Co.

thereunder should be common carriers in the fullest sense of the term, and should carry either persons or property as the occasion might require.

2. There being no authority in sec. 1820, S. & B. Ann. Stats., for the formation of a railroad corporation for the carriage of passengers only, such a corporation could not exercise the power of eminent domain, conferred by sec. 1828 upon corporations organized under said sec. 1820, and could not, therefore, condemn a right of way across a railroad previously constructed.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

On the 28th day of June, 1898, articles of incorporation of the *Oshkosh, Algoma & Black Wolf Railroad Company* were filed in the office of the secretary of state, under sec. 1820, S. & B. Ann. Stats. The articles stated that the corporation was formed " for the purpose of constructing, maintaining and operating a railroad for public use *in the conveyance of persons.*" The railroad to be constructed by the corporation so attempted to be formed was stated in the articles to be about 1.7 miles in length, running from a point of junction with the line of the Citizens' Traction Company (an electric street railway line) at the city limits of the city of Oshkosh, through the towns of Algoma and Black Wolf, in Winnebago county, to a point in section 1 on the shores of Lake Winnebago, in said town of Black Wolf.

Immediately after the filing of its articles, the new corporation filed in the circuit court for Winnebago county a petition for the purpose of condemning a strip of land sixteen feet in width across the right of way of the main track of the *Chicago & Northwestern Railway Company,* such strip being a part of a highway which crosses said *Chicago & Northwestern* right of way, and being desired for crossing purposes. Commissioners were appointed, who found it necessary to take the sixteen-foot strip for crossing purposes, and who also determined the points and manner of the crossing, and authorized the carrying of trolley wires over the

crossing, and fixed the compensation to be made for the right of way and crossing. The *Chicago & Northwestern Railway Company* appealed from the award, and, upon the trial of the appeal, moved to dismiss the proceedings upon various grounds,— among others, upon the ground that the petitioner was not a corporation entitled to condemn the lands of the defendant, or to cross its railway. The objections being overruled, the defendant declined to introduce any evidence, and the appeal was dismissed, from which judgment of dismissal the *Chicago & Northwestern Railway Company* appeals.

For the appellant there was a brief by *Fish, Cary, Upham & Black*, attorneys, and *Edward M. Hyzer*, of counsel, and oral argument by *John T. Fish*. They argued, among other things, that the court erred in holding that the petitioner was a public corporation with the right of eminent domain. *Wisconsin W. Co. v. Winans*, 85 Wis. 26; *Mansfield, C. & L. M. R. R. Co. v. Clark*, 23 Mich. 519. The title to no part of appellant's right of way carrying the main track can be taken by condemnation proceedings. Subd. 6, sec. 1828, and secs. 1851, 1854, Stats. 1898; *Toledo, A. A. & N. M. R. Co. v. D., L. & N. R. Co.* 62 Mich. 564; *Winnebago F. Mfg. Co. v. W. M. R. Co.* 81 Wis. 389; *Clay v. Pennoyer Creek I. Co.* 34 Mich. 207; *Fox v. Holcombe*, 34 Mich. 300; *Chicago & M. L. S. R. Co. v. Sanford*, 23 Mich. 418; *Smith v. C. & W. I. R. Co.* 105 Ill. 511, 513.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl*, and a separate brief by *Eaton & Weed*, and oral argument by *H. I. Weed* and *Geo. H. Noyes*. They contended, *inter alia*, that the crossing sought was a public use. *Independent Order of F. v. United Order of F.* 94 Wis. 234, 239, 240; *Schroeder v. D., G. H. & M. R. Co.* 44 Mich. 387; *McAuley v. C., C. & I. C. R. Co.* 83 Ill. 348; *Farnham v. Delaware & H. C. Co.* 61 Pa. St. 265; secs. 1820, 1828, 1845, 4181, Stats. 1898; *Butte, A. & P. R. Co. v. M. U. R. Co.* 16

Mont. 540, 50 Am. St. Rep. 508; *Talbot v. Hudson*, 16 Gray, 417; *Aldridge v. T., C. & D. R. Co.* 2 Stew. & P. 199, 23 Am. Dec. 307.

Wɪɴsʟow, J.   Several questions are presented by the record in this case, but we shall consider only one of them, for the reason that the view which we feel compelled to take of that question renders it unnecessary, and even improper, to discuss the others.   The question so presented, and which will be considered, is whether, under sec. 1820, S. & B. Ann. Stats. (now sec. 1820, Stats. 1898), a railroad corporation for the conveyance of *persons only* can be legally formed.   If this question must be answered in the negative, then there was no jurisdiction to entertain the attempted condemnation proceedings, because the petitioner was formed for the sole purpose of conveying persons.   We entertain no doubt that this question must be so answered.

Sec. 1820 provides that: "Any number of persons not less than five may form a corporation for the purpose of constructing, maintaining and operating a railroad for public use in the conveyance of persons *or property* . . . by making articles of organization in which shall be stated: (1) The name of the corporation; (2) the place from and to which such railroad is to be constructed or maintained and operated as the case may be," and certain other details as to the length, location, capital stock, and number of directors of the corporation, which are unnecessary to be stated at length.   Such articles are required to be filed with the secretary of state, and thereupon a patent is to be issued by the governor, upon the issuance of which the organization becomes a corporation, with the powers and privileges of railroad corporations under the provisions of ch. 87, S. & B. Ann. Stats. (now ch. 87, Stats. 1898).   Sec. 1828 of such chapter grants to all corporations so formed full powers of condemnations of lands, as well as the power to cross and

intersect railroads theretofore constructed, under certain conditions; and subsequent sections of the same chapter contain specific provisions regulating the manner of exercising the power of eminent domain.

The argument in favor of the petitioner is that sec. 1820, by its words, gives the right to organize a railroad corporation for the purpose of conveying "persons *or* property," and that the natural meaning of this language is that it may be organized for either purpose alone, and that, if it was intended that both persons and property must be carried by every corporation organized under the section, the language should have been in the conjunctive, viz. persons *and* property. Were there no other provisions bearing upon the subject in the statute, this argument would be quite strong; but when we come to consider the duties which the legislature, in the same chapter, has imposed upon railroad corporations formed under it, such a construction becomes plainly impossible. Thus, by sec. 1799, S. & B. Ann. Stats., "every railroad corporation" is required to receive all grain offered to it for shipment, give a bill of lading therefor, and transport the same; by sec. 1799*a*, "every railroad corporation" is required to receive and transport live stock; by sec. 1800, it is required, under certain conditions, to transport firewood; and by sec. 1798, "*every* railroad corporation" is required, upon reasonable notice, to furnish cars to any person applying therefor, for the transportation of freight, and to transport the same with reasonable dispatch, and provide suitable facilities for the receiving and delivery of the same at its stations. All these provisions, and other provisions in the same chapter with regard to fences, cattle guards, and other police regulations, are made, by their terms, to apply to *every* railroad corporation organized under sec. 1820. Again, in enumerating the corporate powers of such a corporation, subd. 7 of sec. 1828 provides that every such corporation shall have power "to take and convey persons or property

over their railroad by the power or force of steam or of animals, or by any mechanical power, and to receive compensation therefor, and to do all business incident to railroad corporations."

A review of all these provisions leaves no doubt in the mind that the legislative intent was that a railroad corporation formed under ch. 87 was to be carrier of both freight and passengers, and that, when it was said that a corporation might be formed for the purpose of carrying persons or property, it was not meant that it might limit itself to the carriage of persons only or property only, but that it might carry either persons or property as the occasion arose.

This view is further strengthened by consideration of the fact that, by subsequent provisions of the statute (secs. 1862, 1863, S. & B. Ann. Stats.), street railways are differentiated from general railroad corporations, and required to be organized under the general corporation law, and not under ch. 87, and are authorized, under certain restrictions and limitations, and upon obtaining authority from local municipalities, to lay their tracks upon the streets of municipal corporations and the highways of adjoining towns. Furthermore, it appears that, by ch. 251 of the Laws of 1897 (sec. 1863a, Stats. 1898), such street-railway corporations were given the right of eminent domain, excepting, however, that no power was given to lay their tracks across the tracks of a steam-railway company. These provisions seem to make it clear that the railroad corporation authorized by sec. 1820 was intended to be a general railroad corporation for the carriage of passengers and freight,— a common carrier in its fullest sense,— and to it were given the fullest provisions for condemnation of lands, as compensation for the great public duties imposed upon and assumed by it, and that street-railroad corporations, for the carriage of passengers, were intended to be a separate class of carriers, with limited duties, and correspondingly limited provisions and powers.

By allowing what is really a street-railroad corporation for the carriage of passengers only to be formed under ch. 87, the evident purpose of the statutes would be evaded, and the result would be that confusion would be introduced into the statute, and that a corporation would be endowed to the fullest extent with the great powers of eminent domain, without assuming the public duties and responsibilities, which, in the eye of the law, form the consideration for so great a gift.

Having thus reached the conclusion that sec. 1820 does not authorize the formation of a railroad corporation for the purpose of carrying persons only, and such being the avowed purpose of the organization of the petitioner, it necessarily follows that it cannot maintain this proceeding.

*By the Court.*— Judgment reversed, and action remanded with directions to dismiss the condemnation proceedings.