McKIVERGAN, Appellant, vs. ALEXANDER & EDGAR LUM-BER COMPANY, Respondent.

*January 12—January 31, 1905.*

*Railroads: Injury to servant: Negligence of fellow-servant: Con-struction of statute.*

Sec. 1816, Stats. 1898 (making railroad companies liable for all damages sustained by their employees, under certain circum-stances, through the negligence of other employees), applies only to railroad companies engaged in a general railroad busi-ness for the carriage of passengers and freight, and does not apply to a private railroad used as an incident to conducting a private business.

APPEAL from a judgment of the superior court of Douglas ·county: C. SMITH, Judge.   *Affirmed.*

This action was brought to recover damages which plaintiff ·claims to have suffered by the negligence of defendant.   The defendant is a corporation under the laws of Wisconsin, "or-·ganized for the purpose of carrying on a general logging, lum-bering, and manufacturing business, buying and selling real estate and merchandise."   In connection with defendant's business it operates a private railroad.   The operation of its railroad business extends from Iron River, Bayfield county, to a place one mile west of Brule—a distance of about twelve miles over the tracks of the Northern Pacific Railway Com-pany, and thence over their private side track for about four

miles, with spurs projecting into adjacent timber lands.   In conducting its railroad it used two geared locomotives in hauling logs to the sidetracks, and two regular locomotives in hauling timber to its mill at Iron River.   It also used Russel logging and other cars for this purpose, part of which were leased from the Northern Pacific Railway.   The Northern Pacific track used by defendant is a part of its main line, and while running over its track defendant operates under orders of the Northern Pacific Company.   It used this track daily for the passage both ways of two or three trains of from twelve to sixteen cars.

At the time of the accident complained of, plaintiff was in defendant's employ and engaged as brakeman in the operation of defendant's logging trains.   The injury occurred while plaintiff was in the discharge of his duty as such brakeman, and while in the act of making a coupling between one of defendant's logging cars and the engine.   It is alleged that while plaintiff was exercising ordinary care in performing his duty, in attempting to place and adjust the link to make the coupling, the engineer carelessly and negligently caused the cars to move towards plaintiff and against the logging car, causing the injury to his fingers and hands.

The case was tried and submitted to a jury, who found for the plaintiff and awarded him damages.   Thereafter the defendant moved for judgment in its favor notwithstanding the verdict, which motion the court granted, and awarded judgment accordingly.   This is an appeal from such judgment.

For the appellant there was a brief by *W. P. Crawford,* attorney, and *Crownhart & Foley,* of counsel, and oral argument by *C. H. Crownhart.*   To the point that the defendant is a railroad company within the meaning of sec. 1816, Stats. 1898, they cited sec. 1861, Stats. 1898; *Roe v. Winston Bros.* 86 Minn. 77, 90 N. W. 122; *Schus v. Powers-Simpson Co.* 85 Minn. 447, 89 N. W. 68; *Pearson v. C., M. & St. P. R. Co.* 47 Minn. 9; *Johnson v. St. P. & D. R. Co.* 43 Minn. 222;

*Blomquist v. G. N. R. Co.* 65 Minn. 69; *Kline v. Minnesota I. Co.* (Minn.) 100 N. W. 681.

For the respondent there was a brief by *Ross & Dwyer,* and oral argument by *W. D. Dwyer.*

SIEBECKER, J.   The court awarded judgment dismissing the complaint, notwithstanding the verdict, for the reason that no actionable negligence had been shown against defendant.   The ruling was based upon the ground that the liabilities established by the provisions of sec. 1816, Stats. 1898, did not attach to defendant.   This section provides:

"Every railroad company operating any railroad which is in whole or in part within this state shall be liable for all damages sustained within the same by any of its employees without contributory negligence on his part . . . (2) while any such employee is so engaged in operating, running, riding upon, or switching passenger, freight or other trains, engines or cars, and while engaged in the performance of his duty as such employee, and which such injury shall have been caused by the carelessness or negligence of any other employee, officer or agent of such company in the discharge of or for failure to discharge his duties as such."

It is contended by plaintiff that in construing this statute the phrase "railroad company," as used in this section, is to be applied as the phrase "railroad corporation" is used in sec. 1861, Stats. 1898, which is as follows:

"The phrase 'railroad corporation,' as used in these statutes, may be taken to embrace any company, association, corporation or person managing, maintaining, operating or in possession of a railroad, whether as owner, contractor, lessee, mortgagee, trustee, assignee or receiver."

Adopting this interpretation leads us to the inquiry, Upon whom did the legislature intend to impose the liabilities prescribed by the terms of sec. 1816, Stats. 1898?   Were its terms only to apply to railroad corporations doing a public service, commonly known as "commercial railroads," or was

it intended to impose these liabilities on every person, company, or corporation operating trains, engines, or cars, regardless of whether such business was in the nature of a public service as common carrier, or devoted exclusively to a private enterprise, including no public service? The question is not so clear and plain as to be free from all difficulties. If the statute be held to apply to the character of the employment, then no valid reason is suggested why it should not be held to cover all classes of public and private railroads, regardless of the nature of their business. The contents of this particular section might, in its literal sense, permit of such an application. This, however, would put it out of harmony with the other provisions of ch. 87, Stats. 1898, covering legislation "on railroads" in this state. The best way to ascertain the legislative intent, under such circumstances, is to consider all the legislative provisions on the subject of which the provision is a part; keeping in view the occasion and necessity of the law and the object sought to be accomplished.

An examination of the provisions of this chapter discloses numerous provisions pointing to the fact that the legislation therein contained referred exclusively to railroad corporations doing the usual business of a public or commercial railroad. Among some of its provisions are those prescribing equality of rates for the transportation of persons or of property for a like service; the obligation to furnish cars for the transportation of property within a reasonable time after notice; the obligation to follow the regulations prescribed for the shipment of grain, carrying of live stock, the stopping of trains, the maintenance of guards and fences, and other requirements for the protection and safety of the public. An important and distinguishing characteristic of railroads included within the purview of this chapter is the grant to every corporation organized under it of the power of exercising the right of eminent domain in its *quasi*-public character. In the case of *Chicago & N. W. R. Co. v. O., A. & B. W. R. Co.*

107 Wis. 192, 83 N. W. 294, it was held, in effect, that these provisions make it clear, and must remove any doubt, that in the legislative intent a railroad corporation, within the provisions of this chapter, is one engaged in a general railroad business "for the carriage of passengers and freight—a common carrier in its fullest sense—and to it [are] given the fullest provisions for condemnation of lands, as compensation for the great public duties imposed upon and assumed by it." The difference between such a railroad and one used as an incident to conducting a private business is readily perceived and understood without elaboration. The objects and uses of the one are far removed from those of the other, though the instruments of operation, such as tracks, cars, and engines, may be common to both.

Since the provisions of all these sections of this chapter, aside from sec. 1816, plainly and unmistakably include commercial railroads only, is there any conceivable ground for holding that this section includes private as well as commercial railroads or common carriers? We have discovered nothing which would warrant the court in enlarging the meaning of the terms of this section beyond the plain meaning of the same terms in the other provisions of this chapter. Every argument for so extending its terms applies with equal force to their use throughout other provisions on this subject. We must conclude that sec. 1816 is intended to embrace within its provisions only such railroad companies as are contemplated by ch. 87, Stats. 1898, namely, one engaged in a general railroad business for the carriage of passengers and freight; that is, a common carrier in the fullest sense. From this it necessarily follows that defendant does not come within the terms of the statute. *Bceson v. Busenbark,* 44 Kan. 669, 25 Pac. 48; *Manhattan Trust Co. v. S. C. C. R. Co.* 68 Fed. 82; *Ellington v. Beaver Dam L. Co.* 93 Ga. 53, 19 S. E. 21.

The case of *Roe v. Winston,* 86 Minn. 77, 90 N. W. 122, is cited to our attention. In this case it appeared that plaint-

iff was injured in this state while in defendant's employ as brakeman on a private train used in connection with defendant's business of general railroad construction work, and the court held he was entitled to recover under the provisions of sec. 1816. His right to recover was predicated on the ground that the provisions of this section applied to a private railroad business. The decision follows the construction adopted by the court in construing a similar Minnesota statute, holding that it was applicable to the business of a private as well as a public service railroad. We are unable to avoid the conclusion that this construction is opposed to the manifest intent of the legislature, as embodied in this section and the other legislation on this subject.

*By the Court.*—The judgment is affirmed.