WEITZMAN, by guardian, Appellant, vs. BISSELL LUMBER COMPANY, Respondent.

*May 4—October 11, 1927.*

*Railroads: Warning signs at grade crossings: Statute applicable to private individuals operating railroads: Automobiles: Collisions at grade crossings: Failure to stop: Proximate cause.*

1. In view of the provision in the opening part of sec. 192.27, Stats., that "No railroad company or corporation . . . whose line . . . extends into or through any incorporated city or village, shall run a train or locomotive faster than fifteen miles an hour," sub. (5) thereof, requiring "Every such railroad company or corporation" to maintain a warning sign one hundred feet from a highway or street crossing, is *held* applicable to a private logging railroad, and the failure of such a railroad to maintain a sign at a crossing was negligence. p. 567.

2. Sec. 192.27, Stats., requiring the maintenance of warning signs, applies to private individuals operating railroads as well as to corporations, and is therefore not unconstitutional as constituting an unlawful discrimination against corporations. p. 568.

3. Where the driver of an automobile traveling not over twenty-eight miles an hour on a slight up-grade saw a train of a private logging railroad when eighty-five feet from the crossing at which her automobile collided with the train, she was negligent as a matter of law, and the trial court properly found as a matter of law that the failure of the railroad to maintain a warning sign one hundred feet from the crossing, as required by sec. 192.27, Stats., was not a proximate cause of the accident. pp. 569, 570.

ESCHWEILER, J., dissents in part.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

This action was brought by *Neal Weitzman,* a minor, by his guardian, against the *Bissell Lumber Company,* to recover damages for personal injuries sustained by him in a collision between an automobile in which he was riding and a train operated on a logging railroad owned by the defendant *Bissell Lumber Company.* Judgment for defendant, and plaintiff appeals.

On the afternoon of May 27, 1925, the plaintiff, *Neal Weitzman,* was riding as a free passenger in an automobile which was being driven in a northerly direction on the highway designated County Trunk T, in Lincoln county, which said highway is crossed by the logging railroad owned and operated by the defendant herein; that at the point of intersection of said highway and said railroad a collision occurred between the automobile in which he was riding and a train being operated on said logging railroad, causing the plaintiff serious injury. The defendant did not maintain at this crossing a sign bearing the inscription "Look out for the Cars," required by sub. (5) of sec. 192.27, Stats. The failure to maintain this sign is the only negligence ascribed to the defendant upon which liability is predicated.

The trial court, during the trial, was of the opinion that the failure to maintain this sign constituted negligence on the part of the defendant as a matter of law. The court was also of the view that the driver of the automobile was guilty of negligence as a matter of law. Neither the question of the defendant's negligence, nor the negligence of the driver of the automobile, was submitted to the jury. The questions submitted to the jury were (1) whether the negligence of the driver of the automobile was the only proximate cause of the collision, which the jury answered No; and (2) whether the absence of the sign-board bearing the inscription "Look out for the Cars" was a proximate cause of the collision, which question the jury answered Yes. The

next question found the plaintiff's damages at the sum of $12,000.

In an opinion rendered by the trial court, upon motions made after verdict, the court reached the conclusion that the statute, sub. (5), sec. 192.27, did not apply to logging railroads; that the defendant was under no obligation to maintain the sign, and that, consequently, its failure to maintain the same did not constitute negligence on the part of the defendant. The court further concluded that, even though the defendant was under a legal duty to maintain the sign, the absence of the sign did not constitute a proximate cause of the accident, and rendered judgment in favor of the defendant. From this judgment plaintiff appealed.

*Walter D. Corrigan, Sr.,* of Milwaukee and *Humphrey Barton* of St. Paul, for the appellant.

For the respondent there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids and *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *Charles F. Smith* and *Theo. W. Brazeau.*

The following opinions were filed June 20, 1927:

OWEN, J. The first question to be determined is whether by sub. (5), sec. 192.27, Stats., the defendant was under a legal duty to maintain the warning sign at the crossing of the railroad track over the highway in question. It is the contention of the respondent that this statute applies only to common carriers and not to a private corporation such as the defendant, which simply maintains and operates a railroad in connection with its own private business. Sec. 192.27 is found in ch. 192 of the Statutes, which relates to the general regulations and liabilities of railroads. From a perusal of the general provisions of this chapter it is apparent that a great portion of the regulations therein contained applies only to common-carrier railroads. For instance, it prescribes passenger fares, penalizes passengers who do not provide themselves with a ticket before board-

ing a train, requires every railroad corporation operating a road to receive any and all grain offered to it and to deliver to the shipper or consignor the usual bill of lading for such grain; much the same regulations with reference to live stock; requires the maintenance of stations at certain places, and many other similar regulations which undeniably apply only to common-carrier railroads.

Ch. 180, Stats., provides for the organization of domestic corporations, and provides, among other things, that such corporations may be organized for the purpose of "building, constructing, maintaining and operating private steam logging railroads for use in carrying on and conducting a logging and lumbering business," etc. Ch. 190 provides specifically for the organization of corporations "for the purpose of constructing, maintaining and operating a railroad for public use in the conveyance of persons or property," etc.

Generically speaking, therefore, there is an obvious difference between a common-carrier railroad and a private logging road such as that operated by the defendant.

Prior to the passage of ch. 291, Laws 1923, the present chapters 190, 191, and 192 of our present statutes formed a part of ch. 87 of the Wisconsin Statutes. By sec. 1861, then a part of ch. 87, it was provided, "The phrase 'railroad corporation,' as used in these statutes, may be taken to embrace any company, association, corporation or person managing, maintaining, operating or in possession of a railroad, whether as owner, contractor, lessee, mortgagee, trustee, assignee or receiver." It is to be noticed that this definition does not provide that the phrase "railroad corporation" *shall* be taken to embrace any company, etc. It simply says that the phrase "railroad corporation" *may* be taken to embrace any company, etc. Now what was the purpose of this provision in the nature of a definition of the phrase "railroad corporation?" Certainly it did not mean

that the phrase "railroad corporation", should at all times be construed as therein provided. It laid down a rule, but not a hard-and-fast rule, of construction. Manifestly it was intended to be an elastic rule, and one which would enable the courts to give effect to the legislative intent.

The major part of the regulations of ch. 87 were appropriate only to common-carrier railroads. As a rule, by the statutory language quite consistently implied throughout the chapter, the regulations were made to apply to "any railroad corporation." However, a perusal of said ch. 87 discloses regulations quite as appropriate to private corporations operating private railroads as to public railroads. This would seem true with reference to safety regulations. This is also true of sec. 1836, for example, which requires every corporation constructing, owning, or using a railroad to restore every stream of water, watercourse, street, highway, etc., along which such railroad may be constructed to its former state of usefulness. In this section the duty is not laid on every "railroad corporation," the general expression used throughout the chapter, but upon every corporation constructing, owning, or using a railroad.

It will at once be seen that this regulation is as appropriate to private railroads as to common carriers. Not only that, but the language of the section plainly expresses the legislative intent to comprehend private as well as public railroads. Sec. 1809, a part of former ch. 87, provides that "any railroad company or corporation operating a railroad in this state" shall not run its trains faster than therein provided. Obviously this regulation relates not only to public railroads but to private corporations operating railroads as well. These provisions are cited to illustrate that all the regulations included in the old ch. 87, most of which are now to be found in chapters 190, 191, and 192, were not intended to apply exclusively to public or common-carrier railroads. It seems obvious, therefore, that the rule of con-

struction embodied in sec. 1861 (now sec. 192.74) was pre-
scribed for the purpose of enabling the court to construe the
term "railroad corporation" to include not only any other
kind of corporations but any person or individual, where
such was the evident legislative purpose.

This conclusion is further strengthened by consideration
of the decision of this court in *McKivergan v. Alexander &*
*Edgar L. Co.* 124 Wis. 60, 102 N. W. 332, and the legisla-
tion following that decision. In that case sec. 1816 of the
Statutes, which provided that "Every railroad company op-
erating any railroad which is in whole or in part within this
state shall be liable for all damages sustained within the
same by any of its employees without contributory negli-
gence on his part," etc., was construed as applying ex-
clusively to public or common-carrier railroads. In the
course of the opinion the court said: "An examination of
the provisions of this chapter discloses numerous provisions
pointing to the fact that the legislation therein contained
referred exclusively to railroad corporations doing the usual
business of a public or commercial railroad." The court
not only held that the provisions of sec. 1816 referred ex-
clusively to commercial railroads, but it took occasion to
say, *obiter,* that the provisions of the entire chapter applied
exclusively to such railroads. It did not undertake to say
what was meant by the rule of construction provided by
sec. 1861. However, we apprehend that the rule of con-
struction there laid down is sufficiently clear to obviate the
necessity for elucidation. The decision in the *McKivergan*
*Case* was rendered January 31, 1905. Although the legisla-
ture was in session in 1905 it apparently took no notice of
the decision. However, said sec. 1816 was revised by
ch. 254, Laws of 1907, and the legislature expressly wrote
into this section the construction embodied in sec. 1861.
Here certainly is a most emphatic legislative declaration
that said sec. 1861 (now sec. 192.74) is intended to apply
to other than public railroad companies.

Recurring to the provisions of sub. (5), sec. 192.27, we cannot proceed upon the theory that all regulations of railroads formerly embodied in ch. 87 applied exclusively to public railroads, and we are required to determine not only from the language employed, but from the subject matter and the purpose of the legislation, whether that section, requiring warning signs at railroad crossings, applies to the defendant. The opening portion of that section reads as follows: "No railroad company or corporation operating a railroad in this state and whose line of road extends into or through any incorporated city or village, shall run a train or locomotive faster than fifteen miles an hour," etc. Then sub. (5) of said section, the provision with which we are here concerned, provides: "Every such railroad company or corporation shall erect and maintain at all times at every place where its railroad track crosses a public highway or street" the warning sign prescribed therein. It would seem that the legislature *ex industria* not only included within this regulation railroad corporations but private corporations operating a railroad. Furthermore, when we refer to the purpose of this legislation, no reason is apparent why a logging railroad should be excluded from the duties therein imposed.

It is said that logging railroads do not run their trains as fast, nor operate trains as heavy, as commercial roads. However, logging railroads frequently run through undeveloped country and cross highways where the vision is greatly obscured, and although they do not run as fast or operate as heavy trains, they are quite as much a menace to the traveler upon the highway as the heavier and faster-moving trains of the commercial railroads. We conclude that it was the duty of the defendant to maintain the warning sign required by sub. (5), sec. 192.27, at this highway crossing and that its absence constituted negligence on its part.

The lower court was of the opinion that unless the statute

be construed as applying only to common carriers it must be held unconstitutional, as it would exempt from its provisions private individuals operating railroads, and would fall within the condemnation of the rule announced in *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456, and *State v. Lange C. Co.* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57, as constituting an unlawful discrimination against corporations. By applying the rule of construction prescribed in sec. 192.74, however, the regulation is applicable to private individuals operating railroads as well as corporations, so that there is no classification or unlawful discrimination.

The jury found that the failure of the defendant to maintain this sign constituted a proximate cause of the accident. The court set aside this finding of the jury and held as a matter of law that such failure did not constitute a proximate cause of the accident. The automobile was proceeding north on county trunk T. Just south of the railroad track and just east of the highway were a number of buildings comprising a lumber camp. The driver of the automobile testified positively both upon direct and cross-examination that when she was opposite or in front of the second building from the track she saw a train on the track proceeding in a westerly direction. Measurements conclusively show that the north side of the second building was eighty-one feet six inches from the center of the track. When she saw the train, therefore, she was in the neighborhood of eighty-five feet from the track. The train was proceeding in a westerly direction at the rate of about six miles an hour. She testified that immediately upon seeing the train she threw out the clutch and applied the brakes, but, notwithstanding, she ran into the locomotive upon the crossing. Just before reaching the crossing she turned her car sharply to the left, put the front wheels into a ditch, but did not avoid colliding with the locomotive. She does not pre-

tend that she was excited, and she affirms that the brakes of the car were in good condition, as they were repaired just two or three days before.

The evident purpose of the warning sign is to apprise travelers upon the highway, when they are at a distance of one hundred feet, of the presence of the railroad crossing. The most that can be said is that if the sign had been present and she had seen it she would have been apprised of the presence of the railroad track when she was fifteen feet further away. If she had seen the train when she was one hundred feet away, then it is apparent that the absence of the sign could not have been a proximate cause of the accident, because she would have had all the knowledge which the sign was designed to convey. The question is whether, under the circumstances, the fact that she did not see the train until she was within eighty-five feet of the track makes the question of proximate cause one for the jury. According to her own testimony she was approaching this crossing at a speed of twenty-eight miles an hour. The highway approaches the railroad from the south on a slight up-grade. She testified that before entering upon this up-grade her speedometer indicated a speed of twenty-eight miles per hour and that her speed slackened before the time of the accident. Just how much it slackened does not appear. The testimony indicates, however, that at the time she saw the train she was not traveling at more than twenty-eight miles per hour, and probably somewhat less. It is matter of common knowledge that a car traveling at this rate of speed can be stopped at a much less distance than eighty-five feet when the brakes are in proper order.

Doubtless these are the considerations which prompted the court to find the driver of the automobile guilty of negligence as a matter of law, which finding by the way is not challenged upon this appeal. Unless knowledge of the presence of the railroad track when she was one hundred feet

distant therefrom would have enabled her to have done that which would have prevented the collision, and which she could not have done when eighty-five feet distant, the fact that she did not have knowledge of the presence of the track until she was within eighty-five feet thereof cannot be said to have constituted a proximate cause of the collision. Upon this branch of the case we must agree with the trial court.

*By the Court.*—Judgment affirmed.

Eschweiler, J. (*dissenting*). I cannot agree with the statutory construction reached by the majority. I think the trial court gave the proper construction and followed the prior decisions on the precise question.

A motion for a rehearing was denied, with $25 costs, on October 11, 1927.