## In re PUSCHKIN.

### (District Court, E. D. New York. January 12, 1911.)

BANKRUPTCY (§ 408*) — DISCHARGE — OBJECTION — OBTAINING PROPERTY ON CREDIT—MATERIALLY FALSE STATEMENT.

A creditor, who had been selling goods to the bankrupt, to whom he owed $250, insisted on payment in June, 1909. The bankrupt gave postdated checks, and made a sworn statement, which contained a printed notice that it was made to obtain future credit, in which he stated that he had a stock worth $4,500, and owed debts amounting to $1,900, and did a business of $8,000 a year. The checks were paid before bankruptcy, but bills subsequently sold remained unpaid, and the bankrupt filed a voluntary petition on December 24, 1909, and showed by his schedules that he then had only $800 worth of stock, which was thereafter sold to his son-in-law for about half that sum. No explanation was given of the skrinkage, and the only explanation concerning the statement made to the creditor was that the bankrupt could not read English, and that the paper was filled out by the creditor's representative from figures given by the bankrupt, and that the totals were those of the creditor's agent. It was also shown that the bankrupt had insurance amounting to $2,750. *Held*, that such facts required the denial of the bankrupt's application for discharge, on the objection that he had obtained property on credit

on a materially false statement in writing made by him to a person for the purpose of obtaining property on credit from such person, in violation of Bankr. Act July 1, 1898. c. 541, § 14, subd. "b," 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1909, p. 1310), and Act June 25, 1910, c. 412, § 6, 36 Stat. 839.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732–736; Dec. Dig. § 408.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Joseph Puschkin. On objection to bankrupt's discharge. Sustained.

Abr. A. Silberberg, for creditor.
Menken Brothers, for bankrupt.
Joseph Lichtenberg, for trustee.

CHATFIELD, District Judge. The bankrupt filed a. voluntary petition upon the 24th day of December, 1909. He had been in the shoe business at a small town in this district for some three years, having previously been associated with his son-in-law, who was also in the shoe business in a nearby town. Since the sale of the bankrupt's stock, he has apparently gone back to his son-in-law's habitation, and there associated himself with the son-in-law, in some manner, in the same business. Further, the bankrupt's stock was purchased by the son-in-law, at about one-half the price at which the bankrupt valued it. The trustee in bankruptcy did all that he could to further this sale, even to the extent of asking to have it made without notice to creditors, and now the trustee in bankruptcy comes in and disavows any desire to prevent the bankrupt's discharge.

The schedules show that the bankrupt had but $800 worth of stock, while six months before the bankruptcy he had, according to his own statements at the present time, $2,700 (or according to the trade statement which he is claimed to have made, $4,500). Between that time and the date of bankruptcy, he purchased more goods than he had in stock at the time of bankruptcy, and the record shows nothing whatever to account for what became of the balance. If his sales had been sufficient to cover such an amount, he has given no explanation of what became of the proceeds.

Under these circumstances, a creditor who had been selling goods to the bankrupt, and to whom he owed some $250 at the time, insisted upon payment, in the month of June, 1909. The bankrupt gave him checks dated ahead for the amount of his balance, and made a' written statement, which he swore to, and which contained a printed notice that it was made for the purpose of obtaining future credit, in which the bankrupt claimed to have a stock of $4,500, to owe debts of $1,900, and to do a business of $8,000 each year.

Upon application for a discharge, this particular creditor alleged that the bankrupt had made a false statement in writing for the purpose of obtaining credit, and upon which credit was obtained, in swearing to the paper above referred to. The referee has found that this statement was false.

It appears that the bankrupt cannot read English, that he does not speak English well, and his explanation, which would seem to be plausible under ordinary circumstances, is to the effect that he gave the figures to one of this shoe firm, who filled out the totals; that he neither understood the English printing upon the paper, nor knew what the figures were which had been set down; and that his signing and swearing to the same was under a mistaken idea of fact as to the contents of the paper.

It will be seen that $2,600 worth of stock, with $1,900 worth of debts, would make a total of $4,500, while, conversely, a total of $4,500 stock with $1,900 debts, would leave a net surplus of $2,600; and it should also be noted that the bankrupt now places his statement of stock at exactly $2,600, thus making such mistake possible, if the paper were not read or understood.

The special commissioner who heard the testimony found that the bankrupt made a false statement to obtain credit, and has recommended that his discharge be denied. In opposition to this is presented the testimony of the bankrupt, in which he claims that the statement was a mistake. In addition, the bankrupt argues that the dealer extended credit, not only at the time of the statement, but from time to time thereafter, and received payments on account which more than covered the purchases made at the time of swearing to the statement. Hence it is claimed that the subsequent sales were not made with any dependence upon the conditions shown by the sworn statement.

It is also pointed out that the bankrupt had insurance for $2,750, which was nearer the amount of $2,600 than it is that of $4,500; but it should be observed that it is hardly probable that the bankrupt would honestly have insurance, even to a slight extent, greater in amount than his stock, while an insurance up to three-fifths of the value of a stock of goods would not be extraordinary.

The conduct of the whole proceeding would indicate that the creditor could have alleged several other grounds upon which the discharge in bankruptcy should have been denied. He could have made a definite effort to locate the large amount of missing stock; but because he has not done this is no reason why the bankrupt should be given the benefit of possible doubt, when the special commissioner has found facts which seem to be supported by the evidence, and when that possible doubt does not rise to the height of a reasonable doubt that the bankrupt obtained credit upon a statement which he did not know was misleading, in the sense that it was false.

Even if he did not appreciate the precise length of time for which he could obtain credit before making a new statement, or did not figure out and state the net amounts, but accepted the mathematics of the person writing out the affidavit, it is thought that he knew what he was signing.

It would seem that if the bankrupt thought the statement given in June was evidence against himself only for that one purchase, and that he therefore supposed himself immune when undertaking fraudulent transactions in the future, he should not be given the benefit of his supposed immunity, when the law holds him responsible for strict

accountability for his actions, and when his creditors have a right to assume that he knows the law, to the extent of honesty.

The language of the section relating to discharges, viz., Act July 1, 1898, c. 541, § 14, subd. "b," 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended in 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1909, p. 1310]), provided that a discharge shall be refused if the bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit." This was the language of the law at the time the present proceeding was instituted; but by Act June 25, 1910, c. 412, § 6, 36 Stat. 839, this language has been changed to read, "obtained money or property on credit upon a materially false statement in writing, made by him to any person or his representative for the purpose of obtaining credit from such person."

Under the language of the section as it formerly was, the false statement had to be made with the intent of obtaining such credit as it was planned at the time to afford a basis for. Under the language as amended, the word "such" has been omitted, and the section would seem to apply to any false statement which had to do with the extension of credit affecting the bankruptcy proceeding.

We need not consider the language of the new section, for, even under the language of the statute as it was before, the obtaining of such credit as is shown in this case was certainly based upon the condition of affairs sworn to in the statement, and the payment of the first bills, after the statement was made, only tended to further increase the deception, if the statement were false.

The discharge will be denied.