## 8646

### BENNETT v. SOUTHERN RY.—CAROLINA DIVISION.

#### (79 S. E. 710.)

MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. EVIDENCE.
ISSUE FOR JURY. CHARGE. APPEAL AND ERROR. ACTION FOR WRONG-
FUL DEATH. DAMAGES. NEW TRIALS.

1. In an action for the death of a locomotive fireman, who was killed
   when the engine was derailed at a burning trestle, evidence of the
   engineer's reputation for carefulness is inadmissible.
2. In an action for the wrongful death of a locomotive fireman, killed
   when his engine was derailed at a burning trestle, where it appeared
   that immediately after another engine had passed over the trestle it
   was discovered to be on fire, testimony of a witness that he saw
   places near by where fire had been dropped is admissible as tending
   to show the origin of the fire.
3. If there is any competent evidence at all tending to sustain the
   allegations of the complaint, the case should be submitted to the
   jury, and nonsuit denied.
4. A statement in the charge that proof of an injury to a servant by
   defective machinery was *prima facie* evidence of negligence on the
   part of the master was not error, where from the whole charge it
   was made clear that plaintiff could not recover, unless she showed
   affirmatively by a preponderance of the evidence that the injuries
   sued for were caused by the master's negligence.
5. As the Federal Employers' Liability Act (Act April 22, 1908, c. 149,
   35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) is general in its
   terms, and makes no specific regulations as to the quantity and
   method of proof of negligence, the laws of the State wherein the
   action is brought govern, and hence, even in an action brought under
   such statute, proof that the injury was caused by defective appli-
   ances makes out a *prima facie* case of negligence on the part of the
   master, where that is the rule of the State.
6. In an action for the wrongful death of a locomotive fireman, brought
   under the Federal Employers' Liability Act (Act April 22, 1908,

c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), the Court charged that proof of injury to defendant by defective machinery was *prima facie* evidence of negligence on the part of the master. Other portions of the charge correctly stated the master's duty to furnish the servant with a safe place to work and appliances; it nowhere being even intimated that the master was an insurer of the safety of his servant. The charge further limited the jury to a consideration of the negligence specified in the complaint, and required proof by a preponderance of the evidence to justify a verdict for plaintiff. *Held* that, as the Court required the jury to consider the charge as a whole, it was not objectionable as a charge upon the facts.

7. Where the Court gave the requests of defendant, he cannot complain of the error therein.

8. The recovery under Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]) for the wrongful death of a servant is limited to compensation for pecuniary loss.

9. A recovery of punitive damages allowed in case of wrongful death under Federal Employers' Liability Act, is limited to the material loss which is susceptible of a pecuniary valuation, and does not include the inestimable loss of the society and companionship of a deceased relative, though it is broad enough to include damages for the loss of the services of husband or wife, and, in case the beneficiary is a child, damages for the loss of training, counsel, education, and nurture which the deceased would have bestowed.

10. Where there is sufficient testimony to support the verdict, the allowance of a new trial is discretionary with the trial Court.

Before SEASE, J., Winnsboro, September, 1912. Affirmed.

Action by Hattie E. Bennett, as administratrix of the estate of Luther W. Bennett, deceased, against the Southern Railway—Carolina Division and the Southern Railway Company, for wrongful death of plaintiff's intestate under provisions of Federal Employers' Liability Act. Judgment for plaintiff, and defendants appeal.

The defendants' exceptions were as follows:

Please take notice that the defendants, in accordance with their notice of appeal heretofore served upon you, now

make and file the following exceptions to the rulings and to the charge of the presiding Judge made upon the trial of the above stated case:

1. Except because the presiding Judge erred in excluding and not allowing the question and answer of the witness, W. H. Green, on cross-examination, as to whether he considered McAlister, one of the defendants' engineers, and in charge of the train on which plaintiff's intestate was killed, one of the most careful engineers in the service, this testimony being proper in reply to the charges and specifications of negligence made in the complaint as to the running of the train on which the deceased was at the time of his death, the error being in denying the right of the defendants to show the general reputation and character of its servant who had charge, and was alleged to have been reckless in the management and operation of its engine, which said reckless operation resulted in the death of the deceased, and, further, who was also charged with wilful and wanton conduct in running and operating its train at a dangerous and reckless rate of speed, and in failing to keep and maintain any lookout or give any signal or warning to plaintiff's intestate.

2. Except because the presiding Judge erred in allowing and permitting the witness, W. A. Summers, on his direct examination, over the objection of defendants, to testify that he saw a couple of places where fire had been dropped out at a point about a mile above Alston, and at least two and a half miles from the trestle in question, the error being that such testimony was incompetent and irrelevant, such fires not being shown to have originated from coals escaping from defective, old or burned-out ashpans and grates, as charged in the complaint, but originating from sparks from the smokestack, and no negligence being alleged as to defects in the smokestack or as to fires connected therewith.

3. Except because the presiding Judge erred in not granting a nonsuit in the cause upon motion of defendants, there being no testimony showing or tending to show any negligence upon the part of the defendants or breach of duty owing to plaintiff's intestate in the particulars alleged in paragraph 7 of the complaint:

(a) It appearing that there was no evidence showing or tending to show negligence, as specified, in subdivision (a) of paragraph 7 of the complaint, that the defendant company carelessly, recklessly, wantonly and wilfully operated locomotive engines on its line of railroad over the trestle bridge therein mentioned, which said engines contained defective, old and burned-out ashpans and grates which permitted sparks and live coals to drop on said trestle bridge.

(b) It appearing that there was no evidence tending to prove the allegations of negligence contained in specification (b) of the 7th paragraph of the complaint, that there was a failure to inspect the trestle bridge on which plaintiff's intestate was killed, or that said trestle bridge was composed of old, worn-out and defective timber and materials which caused the same to become easily ignited by fire.

(c) It appearing that there was no testimony to prove or tending to prove negligence, as specified in subdivision (c) of the 7th paragraph of the complaint, that the defendant company furnished and maintained an unsafe and dangerous place, to wit: the trestle bridge, upon which plaintiff's intestate was required to perform the duties required of him as locomotive fireman.

(d) It appearing that there was no testimony to prove or tending to prove that the defendant company failed to properly inspect and repair the engines and parts of engines through which fire, coal and cinders might fall and escape and ignite the trestle bridge, as set forth in subdivision (d) of the 7th paragraph of the complaint.

(e) It appearing that there was no testimony to prove or tending to prove that the defendants failed to properly inspect and repair, or failed to maintain in a safe, suitable and proper condition the said trestle and trestle bridge upon which plaintiff's intestate lost his life, or that there was any failure upon the part of the defendant company, its agents and servants, to inspect such trestle and trestle bridge, as set forth in subdivision (e) of the 7th paragraph of said complaint.

(f) It appearing that there was no testimony to prove or tending to prove that the defendants negligently, wantonly or wilfully ran and operated the first locomotive engine, to which the engine on which the plaintiff's intestate lost his life was attached, at a dangerous and reckless rate of speed, and without keeping and maintaining a proper lookout or giving any signal or warning by bell, whistle or otherwise, to plaintiff's intestate, or that such alleged negligence caused the engine, on which plaintiff's intestate was discharging his duty, to run into said burning trestle.

4. Except because the presiding Judge charged the jury, after stating to them that the relation which existed between the plaintiff's intestate and the defendant company was that of master and servant, and that the master must furnish a reasonably safe place, instrumentalities, tools and the like to the servant in the discharge of his duties as such servant; that "where it appears that the servant is injured by defective instrumentalities, machinery, places or things of that kind, it is *prima facie* evidence of negligence on the part of the master, and the master assumes the burden of showing that he exercised due care in furnishing means, places and instrumentalities in matters of that kind," the error being, it is submitted, that the master is not the absolute insurer of the safety of the servant, nor does any presumption as to the master's negligence arise from the fact of injury to the servant, nor does the burden of proof in an action by the servant against the master for an injury

from instrumentalities or machinery shift from the servant
to the master, but the servant must prove the negligence of
the master, as alleged in his complaint; that this is true both
as to law prevailing in this State, and especially under the
Employers' Liability Act of Congress, under which this
action was brought and tried, and that said charge is an
improper and erroneous construction of said act and
deprives the defendants of their full right of defense under
said act.

5. Except because the presiding Judge erred in charging
the jury with reference to the duties and liabilities existing
between a master and servant, as follows: "The master
must use due care, the care that is due, to see that the place
in which, the instrumentalities with which, the servant is
to perform his duties as a servant, are safe and suitable.
Where it appears that the servant is injured by and through
defective instrumentalities, machinery or places and things
of that kind, it is *prima facie* evidence of negligence on the
part of the master, and the master assumes the burden of
showing that he exercised due care in furnishing places,
means, instrumentalities and matters of that kind," the
error being—

(a) That no presumption of negligence on the part of
the master arises from mere proof of injury to a servant
through defective instrumentalities, machinery or places,
nor it is *prima facie* evidence of negligence on the part of
the master, nor does the burden of proof shift from the
servant to the master to show that the master exercised due
care in furnishing places, means, instrumentalities and mat-
ters of that kind.

(b) That such charge entirely excludes the element of
knowledge upon the part of the master, and would make
the master liable upon mere proof of defective instrumen-
talities, machinery or places without proof that the master
knew of such defects or ought to have known of such
defects in the exercise of reasonable care.

(c) That said charge was erroneous because it deprived the defendants of a substantial right of defense, arising under a proper construction of the act of Congress known as the Federal Employers' Liability Act, under which this case was brought and tried, and which was the sole and exclusive law upon the subject.

(d) That, as applied to the case before the jury, the above charge was a charge upon the facts, and was tantamount to telling the jury that in the event they found that there were defects in the trestle or in the instrumentalities of the defendant company's engines, and that by reason thereof Bennett lost his life, that they should find, and that the law was that this made out a case of negligence against the defendants, and that their verdict should be for the plaintiff, unless the defendants showed by the preponderance of the testimony that they had exercised due care in furnishing places, means, instrumentalities and matters of that kind, and that such charge was in violation of the Constitution of this State.

6. Except because the presiding Judge erred in refusing the motion of defendants for a new trial, which was made upon the ground that the verdict in the case was so excessive that it cannot be sustained under the facts or charge in the case as a verdict for compensatory damages under a proper construction of the Federal Employers' Liability Act, which limits the measure of damages to the actual pecuniary loss sustained by the beneficiaries under that act, the error being, as it is respectfully submitted:

(a) That there is no testimony tending to sustain a verdict for $20,000, when the undisputed testimony of the plaintiff herself shows that her husband and intestate was earning only $65 to $75 per month at the time of his death, and it was an error of law, under the Federal Employers' Liability Act, under which the action was brought and tried, to allow such verdict to stand as a verdict for com-

pensatory damages, there being no testimony to support it
for such an amount.

(b) That by the refusal to set aside such verdict and
grant a new trial, the defendants have been deprived of a
substantial right secured to them by said act of Congress,
and it was error of law not to grant a new trial absolutely,
when the undisputed evidence shows that such verdict was
for a grossly larger sum than compensatory damages, or
damages for the pecuniary loss sustained by the plaintiff,
and the other beneficiaries under said Federal Employers'
Liability Act, and when the provisions of that act contain
the supreme and exclusive law that authorized or allowed
an action for the recovery of damages to and by the plain-
tiff for the alleged wrongful death of her said husband
and intestate; and when said act, as construed by the Fed-
eral Courts, limits the damages recoverable thereunder, in
cases of wrongful death, to the actual pecuniary loss sus-
tained by the beneficiaries for whose benefit an action is
allowed by said act.

(c) That the verdict was clearly against the charge of
his Honor to the jury, when applied to the undisputed facts,
and it was error of law not to wholly set it aside and grant
a new trial absolute.

*Messrs. McDonald & McDonald,* for appellant, cite:
*Testimony showed action under Federal Employers' Lia-
bility Act:* 225 U. S. 477; 57 L. Ed. 1171. *That act
governs:* 222 U. S. 444; 56 L. Ed. 257, 262; 222 U. S.
370; 56 L. Ed. 237; 223 U. S. 1; 56 L. Ed. 327, 347, 348,
349, 350. *Charge erroneous under the Federal decisions
which should be followed:* 166 U. S. 617; 41 L. Ed. 1136.
*Res ipsa loquitur repudiated:* 179 U. S. 658; 45 L. Ed.
361; 132 Fed. 593, 596; 142 Fed. 320; 114 Fed. 737; 80
Fed. 865; 139 Fed. 737; 138 Fed. 195; 88 Fed. 462; 98
Fed. 192. *Proof necessary to show master knew of defect
in machinery:* 4 Thomp. Neg. 3864, 4362; 2 Thomp. Neg.

4—98.

1053; 6 Thomp. Neg. 4362, 7528, 7529; I Labatt Master and Servant, sec. 119-121, 128-133, 832-838; 3 Elliott Evidence, sec. 2519; notes 6 L. R. A. (N. S.) 345; 41 L. R. A. 47, 48, 52; 175 U. S. 658; 45 L. Ed. 364; 41 L. Ed. 1136; 166 U. S. 617; 133 Fed. 61; 110 Fed. 674; 200 U. S. 480; 50 L. Ed. 564. *Charge on facts:* 76 S. C. 49; 55 S. C. 179; 66 S. C. 482; 78 S. C. 103; 79 S. C. 120; 83 S. C. 56; 87 S. C. 190; 89 S. C. 492, 140; 91 S. C. 203. *Error not to grant new trial for excessive verdict:* 16 S. C. 14; 19 S. C. 491. *Measure of damages:* 15 So. 876; 9 So. 870, 872, 873; 40 So. 280, 289, 290; 227 U. S. 192, 195, 196; Patterson Ry. Accident Law 401; Tiffany, Death by Wrongful Act, 158, 160-162; 227 U. S. 225; 62 Am. St. Rep. 132; 53 Am. St. Rep. 611; 12 Am. St. Rep. 380.

*Mr. E. J. Best,* for respondent, cites: *Testimony admissible:* 91 U. S. 454. *Burden of proof:* 6 Peters 312; 75 S. C. 402; 184 U. S. 173; 22 Sup. Ct. Rep. 340; 191 U. S. 90-93. *Procedure and practice:* 76 S. E. 212. *Master's knowledge of defects:* 35 S. C. 409. *Measure of damages:* 227 U. S. 192, 196, *et seq.*

September 15, 1913.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This was an action brought in the Court of Common Pleas by the plaintiff to recover $75,000 damages on account of the alleged negligent, reckless, and wilful killing of her husband, Luther W. Bennett, while he was engaged in the employment of the defendant as a locomotive fireman. The action is brought for the benefit of plaintiff and her three infant children. The case was heard before his Honor, Judge Sease, and a jury at September term of the Court, for Fairfield county, 1912, and resulted in a verdict for the plaintiff for $25,000. A motion for a new trial was thereupon made, which was granted, unless the plaintiff would

remit $5,000 of the verdict.   The remittitur was thereafter made.   Judgment entered therein, and appeal was made therefrom, and appellants by six exceptions ask for reversal. The exceptions should be set out in the report of the case.

Exceptions 1 and 2 allege error on the part of his Honor in the exclusion of the testimony of the witness, W. H. Green, on cross-examination, and admitting over objection the testimony of the witness, W. O. Summers.   As to the first exception, which imputes error to his Honor in excluding the question and answer of the witness, Green, on cross-examination, whether he considered McAlister, the engineer in charge of the train on which plaintiff's intestate was killed, one of the most careful engineers of the defendants, it is overruled as being without merit.   The question for the jury was not to determine what the engineer's general reputation was, but what his conduct was on the particular occasion—whether or not at this particular occasion he was guilty of any negligence or dereliction of duty.   As to exception 2 in imputing error to his Honor in allowing witness, Summers, to testify that he saw places where fire had been dropped about two miles from the trestle bridge, which was on fire, on the ground that the same was incompetent and irrelevant, this exception is overruled.   It was competent to go to the jury for them to determine how the fire originated.   It was discovered immediately after one of defendant's locomotive engines had passed over the bridge in question, and it was a question for the jury to determine how crossties and bridge caught fire and burned.   This testimony tended to elucidate how and by what means the fire originated which destroyed the trestle, and his Honor's ruling is sustained in the case decided by the Supreme Court of the United States of *Grand Trunk Ry.* v. *Richardson,* 91 U. S. 454, 23 L. Ed. 356.   This exception is overruled.

The third exception alleges error on the part of his Honor in refusing to grant the motion for nonsuit.   The law is

so well settled that there is no error in refusing a motion of nonsuit, if there is any competent evidence at all to sustain the allegations of the complaint that quotation of authority is unnecessary under such circumstances, the case must go to the jury. There was sufficient evidence in this case to carry the case to the jury, and his Honor committed no error in so holding. This exception is overruled.

Exceptions 4 and 5 allege error on the part of his Honor in his charge to the jury, said error being in charging the jury that proof of injury to a servant by defective machinery is *prima facie* evidence of negligence on the part of the master, it being alleged, among other things, that such charge deprived the defendants of a substantial right of defense arising under a proper construction of the act of Congress, known as the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), and also upon the ground that such a charge was in violation of the Constitution of this State as a charge on the facts. We do not think the charge of the Circuit Judge, to the effect that the proof of injury to a servant by defective machinery is *prima facie* evidence of negligence on the part of the master, was erroneous, and not in harmony with the Federal decisions, when his whole charge is considered. By reference to his charge as a whole the jury could not have inferred that the plaintiff could recover, unless she showed affirmatively by the burden of proof on the part of the plaintiff that the deceased's injuries were caused by the master's negligence. The Federal Employers' Liability Act is general in its terms, and makes no specific regulation as to the quantity, quality, and methods of proof of negligence, and, in the absence of any such regulation, will conform as near as possible to the State law in the manner and mode of trial and the rules of pleading, evidence, and law applicable thereto as was

said by the Supreme Court of North Carolina in *Fleming* v. *Norfolk Southern Ry. Co.,* 160 N. C. 196, 76 S. E. 212: "The Federal statute being thus general in its terms, and making no specific regulations as to the methods by which the fact of contributory negligence should be established, when the action is brought in the State Court, the procedure should conform as near as may be to that of the State law applicable, including the 'character of the action, the order and manner of trial, the rules of pleading and evidence,' etc. Hughes on Federal Procedure, p. 355; *Cochran* v. *Ward,* 5 Ind. App. 89, 29 N. E. 795, 31 N. E. 581, 51 Am. St. Rep. 229."

In *Green* v. *Railway Co.,* 72 S. C. 402, 403, 52 S. E. 47, 5 Ann. Cas. 165, the Court says: "When an injury to a servant is proved to result from a defective machine, the law puts upon the master the burden of proving that he used due care in making it safe." The Court further says: "It sometimes happens, however, that a description of the appliance and of the nature of the accident will indicate negligence by the master in providing appliances which he could not, as a reasonable man, regard adequate for the purpose for which they were used. But this is an inference from proof of the circumstances or physical facts as given in evidence, and not a presumption of law."

In *Hicks* v. *Sumter Mills,* 39 S. C. 39, 17 S. E. 509: "Proof of negligence is a condition precedent to the liability of the master. The proof may be either direct or circumstantial; but the plaintiff must assume the burden of furnishing evidence of one kind or the other."

An examination of the Judge's charge, as a whole, satisfies us that the language he used and issues he submitted to the jury to determine under the pleadings and evidence in the case was not prejudicial to the defendants and not a charge on the facts. In charging what duty was imposed on the master, as to furnishing the servant with a place to work, instrumentalities, machinery,

appliances, etc., he correctly defined what the law was, as decided by this Court in a number of cases, and from nothing that he said could the jury infer that the master was an insurer of the safety of the servant. The charge of the Judge told the jury in substance that the plaintiff's case was to be made out by preponderance of the testimony, and in this connection used the following language: "The action here being tried is based entirely upon negligence, and, in order for the plaintiff to recover, the law imposes upon her the burden of proof of satisfying you by the preponderance or greater weight of the testimony that the defendants were negligent in the particulars described in the complaint. Every cause of action depends entirely upon the negligence alleged in the complaint, and, even if you were to find the defendants were negligent in some particulars, but were not negligent in the particulars mentioned in the complaint, then the plaintiff could not recover. In other words, in order to recover in this action, the plaintiff must establish by the preponderance of the evidence that the defendants were negligent in the particulars alleged in the complaint. No other negligence could be considered by you in making up a verdict, if you should find in favor of the plaintiff." During his Honor's charge he said this to the jury: "Now, as I sometimes tell juries, I cannot give you all the law in one proposition, therefore, you must take my charge as a whole. It is not intended to be contradictory—that is, one proposition contradict another. They are intended to qualify or modify one another. And, gentlemen, this is a long case. The principal points involved and the requests are very long. You will have to pay strict attention, and take my charge as a whole—the general charge, what was said by his Honor in charging defendants' request—we fail to see wherein his Honor said anything that was prejudicial to the defendants as complained of in this assignment of error, and this exception is overruled.

The errors complained of in the fifth exception are overruled, for the same reason that exception 4 is overruled.

The sixth exception complains of error on the part of the Judge in refusing a new trial absolute, on the ground that the verdict was excessive, and could not be sustained as compensatory damages under a proper construction of the Federal Liability Act, and against the law laid down by the Court when applied to the undisputed facts of the case.

We have already held that his Honor committed no error in refusing the motion for a nonsuit, and sending the case to the jury for their determination. The Judge, in charging the jury as to the measure of damages, and the mode of ascertaining the same, and what elements enter into the consideration of the same, could not have considered anything but pecuniary loss or damage. The Judge charged the written requests of defendants, as prepared by them and asked for, and adopted the exact language. They cannot now be heard to complain of getting what they asked for; but his Honor charged the correct law as laid down in the case of *Mich. Cent. R. R. Co.* v. *Vreeland,* 227 U. S: 59, 33 Sup. Ct. 192, by the Supreme Court of the United States, February 15, 1913 :

"The word 'pecuniary' did not appear in Lord Campbell's Act, nor does it appear in our Act of 1908. But the former act and all those which follow it have been continuously interpreted as providing only for compensation for pecuniary loss or damage. A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of the loss of the beneficial plaintiff which is the foundation of the recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set pecuniary valuation.' Patterson, Railway Acci. Law, sec. 401. Nevertheless, the word as

judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation.

"In *Tilley* v. *Hudson River R. Co.,* 24 N. Y. 471, and 29 N. Y. 252, 86 Am. Dec. 297, the Court stated that: 'The word "pecuniary" was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though grievous and painful to be borne, cannot be measured or recompensed in money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of damages.' To the same effect are the cases of *Schaub* v. *Hannibal & St. J. R. Co.,* 106 Mo. 74, 16 S. W. 924, which was followed by the Circuit Court of Appeals for the Eighth Circuit in *Atchison, T. & S. F. R. Co.* v. *Wilson,* 1 C. C. A. 25, 4 U. S. App. 25, 48 Fed. 57; *Lett* v. *St. Lawrence & O. R. C.,* 11 Ont. App. Rep. 1; *Penn. R. Co.* v. *Goodman,* 62 Pa. 332; *Louisville, N. A. & C. R. Co.* v. *Rush,* 127 Ind. 545, 26 N. E. 1010; Tiffany, Death by Wrongful Act, secs. 154 to 162, inclusive; Patterson, Railway Acci. Law, secs. 401-406.

"No hard and fast rules by which pecuniary damages may in all cases be measured is possible. In *Lett* v. *St. Lawrence & O. R. C.,* cited above, it was said, in the opinion of Patterson, J. A., after a review of all the English cases construing the act of Lord Campbell: 'That there is through them all the same principles of construction applied to the statute. Each fresh state of facts as it arose was dealt with, and furnished a further illustration of the working of the act. The party claiming was held to be entitled or not to be entitled, the scale of compensation acted upon

by the jury was approved or disapproved, in view of the immediate circumstances; but in no case has it been attempted to decide by anticipation what are the limits beyond which the benefits of the statute cannot be claimed.' The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child, or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled.' Tiffany, Death by Wrongful Act, secs. 158, 160-162.

"The Court below instructed the jury that they could not allow damages for the grief and sorrow of the widow, or as a 'balm to her feelings.' They were directed to confine themselves to a proper compensation for the loss of any pecuniary benefit which would reasonably have been derived by her from the decedent's earnings. The Court did not stop there, but further instructed the jury that: 'In addition to that, independent of what he was receiving from the company, his employer, it is proper to consider the relation that was sustained by Mr. Wisemiller and Mrs. Wisemiller, namely, the relation of husband and wife, and draw upon your experiences as men, and measure as far as you can what it would have reasonably been worth to Mrs. Wisemiller in dollars and cents to have had during their life together, had he lived, the care and advice of Mr. Wisemiller, her husband.' *Vreeland* v. *Michigan Cent. R. Co.* (C. C.), 189 Fed. 496. This threw the door open to the widest speculation. The jury was no longer confined to a consideration of the financial benefits which might reasonably be expected from her husband in a pecuniary way. A minor child sustains a loss from the death of a parent, and particularly of a mother, altogether different from that of a wife or husband

from the death of the spouse. The loss of society and companionship, and of the acts of kindness which originate in the relation, and are not in the nature of services, are not capable of being measured by any material standard. But the duty of the mother to minor children is that of nurture, and of intellectual, moral, and physical training, such as, when obtained from others, must be for financial compensation. In such a case it has been held that the deprivation is such as to admit of definite valuation, if there be evidence of the fitness of the parent, and that the child has been actually deprived of such advantages. *Tilley* v. *Hudson River R. Co.* and *Lett* v. *St. Lawrence & O. R. Co.,* both cited above. If the case at bar had been of such character, the loss of 'care and advice' might have been a proper matter for compensation.

"Neither 'care' nor 'advice,' as used by the Court below, can be regarded as synonymous with 'support' and 'maintenance,' for the Court said it was a deprivation to be measured over and above support and maintenance. It is not beyond the bounds of supposition that by the death of the intestate his widow may have been deprived of some actual customary service from him, capable of measurement by some pecuniary standard, and that in some degree that service might include as elements 'care and advice.' But there was neither allegation nor evidence of such loss of service, care, or advice, and yet, by the instruction given, the jury were left to conjecture and speculation. They were told to estimate the financial valuation of such 'care and advice from their own experience as men.' These experiences, which were to be the standard, would, of course, be as various as their tastes, habits, and opinions. It plainly left it open to the jury to consider the value of the widow's loss of the society and companionship of her husband. In this part of the charge the Court erred. The assignments of error are otherwise overruled. But for this

error the judgment must be reversed, and a new trial
ordered."

There was sufficient testimony to sustain the verdict, and it was within his Honor's discretion to grant or refuse a new trial. This exception is overruled.

Judgment affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE HYDRICK concur.

MR. JUSTICE FRASER. I cannot concur in the result in this case. Ordinarily this Court has no jurisdiction to consider the amount of the verdict in damage cases. This is an action under the Federal statute, and the Supreme Court of the United States in *Michigan Central Railroad Co.* v. *Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192, 57 L. Ed. 417 (Feb. 15, 1913), construed the statute and held that the recovery is confined to the pecuniary loss alone, and that the pecuniary loss is to be determined by the allegations of the complaint and the evidence in the case. The only evidence of pecuniary loss in this case is the wages of the deceased. The wages did not exceed $900. There was no other evidence of pecuniary loss. The loss of $900 per annum is not a basis of a judgment for $20,000. There may be undisclosed circumstances which would render the verdict entirely proper. Under the Vreeland case the circumstances must be alleged and proved. No evidence is a question of law. I find no evidence upon which this judgment for $20,000 can be sustained under the Vreeland case. The Court says in the Vreeland case, 227 U. S., at page 74, 33 Sup. Ct., at page 197, 57 L. Ed. 417: "It is not beyond the bounds of supposition that by the death of the intestate his widow may have been deprived of some actual customary service from him, capable of measurement by some pecuniary standard, and that in some degree that

service might include as elements 'care and advice.' But there was neither allegation nor evidence of such loss of service, care, or advice; and yet, by the instruction given, the jury was left to conjecture and speculation. They were told to estimate the financial value of such 'care and advice from their own experiences as men.' These experiences, which were to be the standard, would, of course, be as various as their tastes, habits, and opinions. It plainly left it open to the jury to consider the value of the widow's loss of the society and companionship of her husband. In this part of the charge the Court erred. The assignments of error are otherwise overruled. But for this error the judgment must be reversed, and a new trial ordered."

The only difference is that in the Vreeland case damages, which were discretionary, were allowed in the charge and here they were allowed in the judgment. It is the judgment that counts. For these reasons I cannot concur.

MR. JUSTICE GAGE was not on the bench when this case was decided.

*Note.*—On writ of error, the United States Supreme Court affirmed the judgment of the State Court in case of *Southern Railway Co.* v. *Bennett,* 233 U. S. 81, the opinion of that Court being delivered by Mr. Justice Holmes as follows:

This is an action under the Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, for causing the death of the plaintiff's intestate. The plaintiff got a verdict for $25,000, on which the Court ordered judgment upon the plaintiff's remitting $5,000. Exceptions were taken, but the judgment was affirmed by the Supreme Court of the State, *supra.* 79 S. E. Rep. 710. The exceptions related to the instructions of the Court on the matter of liability and to the entering of judgment upon a verdict alleged to be excessive. As to rulings of the former class we have

indicated that when the statute is made a ground for bringing up ordinary questions of negligence we shall deal with them in a summary way and usually content ourselves with stating results. Whether such questions are open in a case coming from a State Court we need not decide, as, if open, they can be disposed of in a few words.

The defendant was killed by the falling of his engine through a burning trestle bridge. There was evidence tending to show that the trestle was more or less rotten, that the fire was caused by the dropping of coals from an earlier train and that the engine might have been stopped had a proper lookout been kept. The first complaint is against an instruction to the effect that, if a servant is injured through defective instrumentalities, it is *prima facie* evidence of the master's negligence and that the master "assumes the burden" of showing that he exercised due care in furnishing them. Of course, the burden of proving negligence in a strict sense is on the plaintiff throughout, as was recognized and stated later in the charge. The phrase picked out for criticism did not controvert that proposition, but merely expressed in an untechnical way that if the death was due to a defective instrumentality and no explanation was given, the plaintiff had sustained the burden. The instruction is criticised further as if the Judge had said *res ipsa loquitar*—which would have been right or wrong according to the *res* referred to. The Judge did not say that the fall of the engine was enough, but that proof of a defect in appliances which the company was bound to use care to keep in order and which usually would be in order if due care was taken, was *prima facie* evidence of neglect. The instruction concerned conditions likely to have existed for some time (defective ashpan or damper on the engine and rotten wood likely to take fire), about which the company had better means of information than the plaintiff, and concerning which it offered precise evidence, which, however, did not satisfy the jury. We should

not reverse the judgment on this ground, even if an objection was open to an isolated phrase to which no attention was called at the time.

The supposed error most insisted upon is the entering of judgment upon a verdict said to be manifestly excessive. It is admitted that the Judge charged the jury correctly, according to principles established by *Michigan Central R. R. Co:* v. *Vreeland,* 227 U. S. 59, 33 Sup. Ct. 192, but it is thought to be apparent as matter of law that the jury found more than the charge or the law allowed. The argument is this: The deceased was making not more than $900 a year and the only visible ground of increase was the possibility that he might be promoted from fireman to engineer, with what pay was not shown. He could not have given more than $700 a year to his family. His expectation of life was about thirty years by the tables of mortality. Therefore, at the legal rate of interest the income from $10,000 for thirty years was all that the plaintiff was entitled to, whereas, she was given the principal of $20,000 out and out. It may be admitted that if it were true that the excess appeared as matter of law; that if, for instance, the statute fixed a maximum and the verdict exceeded it, a question might arise for this Court. But a case of mere excess upon the evidence is a matter to be dealt with by the trial Court. It does not present a question for re-examination here upon a writ of error. *Lincoln* v. *Power,* 151 U. S. 436, 14 Sup. Ct. 387; *Herencia* v. *Guzman,* 219 U. S. 44, 45, 31 Sup. Ct. 135. The premises of the argument for the plaintiff in error were not conclusive upon the jury, and although the verdict may seem to us too large, no such error appears as to warrant our imputing to Judge and jury a connivance in escaping the limits of the law.

Judgment affirmed.