HOLMES v. HAMILTON RIDGE LUMBER CORP'N.

(112 S. E. 536.)

1. MASTER AND SERVANT—LUMBER CORPORATION OPERATING LOGGING RAILROAD HELD A "RAILROAD CORPORATION" WITHIN CONSTITUTIONAL RULE AS TO ASSUMPTION OF RISK.—Where defendant corporation engaged in the manufacture of lumber operated a logging railroad for its own use, and also hauled some freight for persons who lived along its line, it was a "railroad corporation" within Const., Art. 9, § 15, eliminating as to railroad corporations the defense of assumption of risk based on knowledge on the part of the injured servant.

2. NEW TRIAL—GRANTING A NEW TRIAL BECAUSE OF ERRONEOUS CHARGE HELD PROPER.—Where a trial Judge gave an erroneous charge that defendant was not a railroad within the meaning of Const., Art. 9, § 15, granting a new trial was not an abuse of discretion.

Before SHIPP, J. Hampton, Fall term, 1920.   Affirmed.

Action by William Holmes against Hamilton Ridge Lumber Corporation.   Verdict for defendant, and an order for a new trial from which defendant appeals.

*Mr. Randolph Murdaugh,* for appellant, cites: *Party cannot complain of error in his own requests to charge*: 98 S. C., 42; 84 S. C., 283   *"Railroad Corporation"* in Sec. 15,

---

NOTE: On the question as to whether logging railroad is a common carrier, see note in L. R. A., 1918-B, 685.

Art. 9, Const. S. C., 1895, *does not include logging railroad*: *Logging road liable for damages by fire under* Secs. 3226 and 3098, 1 Civ. Code 1912; 110 S. C., 318. *Under similar provision of Mississippi Constitution, Courts have held that such a railroad is not included*: 42 So., 174. *Others hold to same effect*: 104 U. S., 533; 113 Fed., 385; 102 N. W., 332; 29 Atl., 1087; 25 Pac., 48; 10 L. R. A., 839; 54 So., 904; 19 S. E., 21; 64 S. E., 102.

*Messrs. Hugh O. Hanna* and *George Warren,* for respondent, cite: *Railroad corporations*: Sec. 3898, 1 Civ. Code 1912; 110 S. C., 318. *Logging railroad included in the term:* 54 S. C., 420; 75 S. E., 1075; 55 S. E., 727; 89 S. E. 1013; 94 S. E. 347; 94 S. E. 408; 65 L. R. A. 887; 165 S. W., 127; 148 Pac., 1122. *Remedial provision should be so constructed as to advance the remdey*: 48 N. E., 271.

May 26, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant in his argument makes the following statement of the issues involved in this appeal:

"This is an action for damages for personal injury sustained by plaintiff while making a coupling of two cars loaded with logs. The plaintiff was employed by defendant as fireman and switchman on what is known as the 'make-up' train, the engine thereof being engaged in the making up of trains of cars loaded with logs in the woods to be transported by other engines over the tramroad or railroad of the defendant from the woods to the mill. The complaint alleges that the defendant is a corporation engaged in the manufacture of lumber. In connection with its saw-mill the defendant operates a tramroad or railroad for its own use in transporting the logs from the woods to the mill. The jury found for the defendant, and, on plaintiff's motion, a new trial was granted by the Court on the ground

that the Court had erred 'in failing to charge the law set forth in Section 15, Art. 9, of the Constitution of 1895, and in regard to assumption of risk, and the Court further erred in charging the request of the defendant in conflict with said section of the Constitution, and in the general charge relating to such matters.' While there are five exceptions to the order granting a new trial, there are really but two questions involved: First, whether a request to charge can be withdrawn, and then failure to charge the law as therein requested be assigned as error on the part of the presiding Judge; and, second, whether or not an ordinary corporation, authorized under the laws of the State of South Carolina to engage in the manufacture of lumber, which in the conduct of its private business operates a logging railroad for the purpose of getting its timber from the woods to the mill, comes within the purview of Section 15, Art. 9, of the Constitution of 1895. From the order granting a new trial, defendant appeals."

In addition to this statement it is well to say that the defendant also carried freight for persons who lived along its line of railroad.

I. The first question to be determined is: Did his Honor make a mistake in charging that the defendant was not a railroad corporation within the meaning of Section 15 of Article 9 of the Constitution of this State. The record shows that the defendant was carrying on the business of a railroad corporation as to freight. The defendant is a foreign corporation, and it must be presumed that the business it was conducting was within its corporate powers. No valid reason has been suggested, and we know of none, to differentiate it from other railroad corporations in this respect. We agree with his Honor that there was error in holding that the defendant is not within the provision of Section 15 of Article 9. Appellant's first proposition cannot be sustained.

II. His Honor was not in error in holding that he had the right to grant a new trial based on the error. It is true his Honor was misled into the error by the withdrawal of plaintiff's request to charge. The respondent who was responsible for the error could not, as a matter of right, demand a new trial. It was, however, within his Honor's discretion, when it appeared to him that there was error and prejudicial error in the case to grant a new trial. We do not see that there was an abuse of discretion. Here there was not only a failure to charge, but a positive charge that was erroneous. There was no error in granting a new trial, and the order granting a new trial is affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION concur.

MR. JUSTICE COTHRAN (dissenting): Action for damages on account of a personal injury sustained by the plaintiff, a servant of the defendant corporation, while engaged in coupling two cars loaded with logs, in a train operated by the defendant upon a logging railroad, constructed by it in connection with its business, which was, as alleged in the complaint, "principally (in) the cutting of timber and manufacturing it into lumber."

During the trial the plaintiff's attorney submitted a request to charge substantially in effect that, because the defendant was at the time operating a logging railroad in connection with its principal business, as stated above, it was a "railroad corporation" within the meaning of Article 9, § 15, of the Constitution of 1895, which eliminates as to railroad corporations the defense of assumption of risk based upon the knowledge on the part of the injured servant of the defective or unsafe condition of machinery, ways or appliances. The presiding Judge inquired of plaintiff's attorney whether or not he contended that the defendant came within the provisions of that section. The

"case" states: "After some discussion plaintiff's attorney withdrew the request."

The jury rendered a verdict in favor of the defendant. Thereupon the plaintiff's attorney made a motion for a new trial "upon numerous grounds."

It is not so stated in the record, but it may be assumed, that one of the grounds was stated in the Judge's order granting a new trial:

"The Court is convinced it was in error in failing to charge the law as set forth in Article 9, § 15, of the Constitution of 1895 and in regard to assumption of risk. The Court is also convinced that error was made in charging the requests of the defendant in conflict with the law as stated in the said section of the Constitution, and in the general charge relating to said matters."

Thereupon the presiding Judge ordered a new trial, and from that order the defendant has appealed.

The appeal involves the consideration of but two questions:

(1)   Could the plaintiff's attorney, after having withdrawn his request to charge the law as contained in Article 9, § 15, of the Constitution of 1895, thereby conceding its inapplicability to the facts of the case, contend on motion for a new trial that the presiding Judge erred in not applying that section?

(2)   Is the defendant, under the alleged and admitted facts, a "railroad corporation," and thereby subject to the provisions of Article 9, § 15, of the Constitution of 1895?

As to the first question:

When the question of the applicability of the constitutional provision was presented to the presiding Judge it was discussed by opposing counsel. The argument of the defendant's counsel against the applicability of the provision appears to have either convinced the plaintiff's counsel, or to have impressed him with such doubt of its applica-

bility that he decided to take his chances without resort to it, rather than imperil the verdict for damages of which he was assured.   This was a voluntary act on his part, for an advantage which he anticipated, and, having miscalculated the result, he should not be allowed to repudiate his concession and get the benefit of a position voluntarily relinquished by him.

When plaintiff's attorney withdrew his request it amounted to a concession that the Constitution did not apply.   The Judge adopted that view, and it became the law of the case. The plaintiff was estopped from urging the alleged error as a ground of appeal to this Court, and was likewise estopped from urging it as a ground for a new trial.   It would be anomaly to hold the same ground which could not form the basis of an appeal to this Court, because by the admission it became the law of the case, could be made the ground of a motion for a new trial.

I concede that there is a difference between the admissions of fact by counsel and the admissions of law, and that the trial Court is not bound to accept the admissions of law, but may correct them of its own motion at any time before verdict.   *Exchange Bank v. McMillan,* 76 S. C., 561; 57 S. E., 630.   But after the case has been tried upon a theory insisted upon by one side, and conceded by the other, if the theory be erroneous as a matter of law the error cannot be corrected either by motion for a new trial or appeal.

"Where a party appears by attorney, the latter, while acting as such, has control of the case; and his acts in the presence of the Court concerning the trial are the same as those of the party himself."   *Coonan v. Loewenthal,* 129 Cal., 197; 61 Pac., 940.

"Error cannot be imputed to the trial Judge for failing to charge requests which were presented, but afterwards

withdrawn." *Groesbeck v. Marshall,* 44 S. C., 538; 22 S. C., 743.

"Where a party has asked the Court to give an erroneous instruction, he cannot complain if it is given." *Nelson v. Railroad Co.,* 92 S. C., 151; 75 S. E., 408.

In *Bennett v. Railroad Co.,* 98 S. C. 42; 79 S. E., 710, it was held:

"The Judge charged the written requests of defendants as prepared by them and asked for, and adopted the exact language. They cannot now be heard to complain of getting what they asked for."

As to the second question:

How it is possible to make a "railroad corporation" out of a lumber company, simply for the reason that the lumber company is operating a railroad as an incident to its principal business (admitted in the complaint) of "cutting timber and manufacturing it into lumber," is beyond my comprehension. The Constitution refers to a "railroad corporation," and the provision that the General Assembly may extend the section "to any other class of employees" is a postitive indication that the section as it stands was limited to "railroad corporations"; and, if a lumber company is not a railroad corporation, the section cannot apply to it.

It is not permissible to invoke the provisions of Section 3098, Vol. 1, Code of Laws 1912, defining "railroads and railways" and declaring that the phrase included all railroads operated by steam, and make that section constructive of the phrase "railroad corporation" used in the Constitution, for two reasons: By its terms Section 3098 is limited in its application, "in the construction of this chapter," which does not include the constitutional provision; the interpreted phrase is "railroads and railways," not " railroad corporation," so that there is no authority even in Section

3098 to construe "railroad corporation" in any other way than its terms demand.

In the case of *Crawford v. Mullins Lumber Co.,* 110 S. C., 318; 96 S. E., 494, it was held that a logging railroad operated by a lumber company was a "railroad" within the purview of Section 3226 (the fire statute) by virtue of Section 3098, for the reason that Section 3098 controlled the construction to be placed upon the word "railroad" wherever it occurred in the chapter of which 3226 was a part.   It did not hold that that construction made a lumber company a "railroad corporation," a species of transubstantiation beyond the supernatural powers of even a legislative body.

The method of incorporating the two kinds of corporations is essentially different.   A railroad corporation is chartered by the General Assembly, after three months' notice under Sections 34 to 37, Vol. 1, Code of Laws 1912; a lumber company is a business corporation chartered by the Secretary of State under Sections 2834, etc.; the one is a *quasi-* public corporation endowed with great privileges and subject to drastic liabilities; the other is a private corporation possessed of only such power as may be conferred; the one is endowed with the right of condemnation; the other is not.   Their powers and purposes are essentially different.

The section of the Constitution under consideration was taken bodily from the Constitution of Mississippi.   In the case of *Bradford Co., v. Heflin,* 88 Miss., 314; 42 South., 174; 12 L. R. A. (N. S.), 1040; 8 Ann. Cas., 1077, the question arose as to the applicability of the section to a construction company which owned a railroad used in connection with its work in the construction of a line of railroad for a railroad corporation.   It was contended that the intention of the Constitution was to protect employees engaged in the inherently dangerous occupation of operating

a railroad; that it should embrace any corporation or person, whether chartered as a railroad corporation or not, while it was actually operating a railroad; that we must look not to the name of the corporation, or even at its charter, to determine the applicability of the section, but solely to the character of the employment in which the injured servant was engaged.    The Courts say:

"If this test were adopted, undoubtedly every logging railroad, every railroad running to a mine, every railroad of whatever size or character, owned or operated by any sort of partnership, association of persons, or even by any private individual, would necessarily have to be held as a railroad corporation, within the meaning of said Section 193, merely and only because the nature of the work done by its employees was of a like sort of dangerousness with that performed by the employees of railroad corporations proper."

They add:

"It might be wise to extend such remedies to the employees of any business, or any corporation, or any partnership, or any association of persons, owning logging railroads, or lumber railroads, and the like; but all that (so far as what was actually done by the Constitution makers is concerned) they left, and they expressly left, by the last clause of the section to be enacted or not enacted by the Legislature as the developments of the future might show to be wise and best."

The fact that the defendant at times carried freight on its logging railroad may upon such occasions have imposed upon it the duties and liabilities of a common carrier, but it certainly could not have the miraculous effect of transmuting the lumber company into a railroad corporation. An individual may assume the duties and be held to respond to the liabilities of a common carrier; but I do not appre-

hend that such conduct would transform him into a railroad corporation.

In *McKivergan v. Alexander Co.*, 124 Wis., 60; 102 N. W., 332, a statute (Section 1816, Rev. Stat.) similar to our constitutional provision was invoked against a lumber company operating a logging railroad. Section 1861 was almost identical with our Section 3098.

"Held, that Section 1816 * * * embraces within its provisions only railroads engaged in a general railroad business for the carriage of passengers and freight, and has no application to a private railroad operated in connection with a logging and lumber business."

In *Williams v. Northern Lumber Co.* (C. C.), 113 Fed., 382, it was held that the statute of Minnesota providing that a railroad corporation owning and operating a railroad should be liable in damages, abrogating the fellow-servant rule, did not apply to a logging railroad built and operated by a lumber company for purposes connected with its principal business, and not as a common carrier.

In *Palangio v. Wild River Co.*, 86 Me., 315; 29 Atl., 1087, it was held that a lumber company owning a railroad constructed and operated in its private business was not a railroad corporation within the meaning of a Wisconsin statute made applicable to railroad corporation. The Court said:

"Surely, it is impossible to regard such a corporation as a railroad company. It does not possess one of the distinguishing characteristics of a railroad company. True, the company has constructed a roadbed upon its own land, upon which it has placed sleepers and iron rails for the transportation of its own lumber from its own lands. But this no more makes it a railroad company, within the meaning of the law, than the construction of a camp in which to feed and lodge its laborers would make it a hotel company. An individual can lay a railroad track upon his own

land for his own use without obtaining a railroad charter, and without thereby making himself a railroad company; and so can a lumbering corporation."

The same position is sustained in *Beeson v. Busenbark,* 44 Kan., 669; 25 Pac., 48; 10 L. R. A., 839, where the liability of railroad contractors, who owned and operated a railroad in their private business, to a statute imposing exceptional liability upon railroad corporations, was denied. The opinion contains an exhaustive and convincing discussion of the question to which reference must be made rather than prolong· this opinion with extracts therefrom. To the same effect is *Griggs v. Houston,* 104 U. S., 553; 26 L. Ed., 840.

In the case of *In re Ferguson Contracting Co.* (D. C.), 183 Fed., 882, it was held that a statute requiring a mortgage of the property of a railroad corporation to be recorded in a certain way had no application to engines used on temporary construction railroads.

I think that it is clearly demonstrated in the case of *Campbell v. Railroad Co.,* 97 S. C., 383; 81 S. E., 676, that the provisions of Section 3098 are confined, in the definition of railroads, to the regulations of that chapter. It is there held that an electric railway is not subject to the signaling statute. It would hardly be contended that it was not a railroad corporation within the purview of the constitutional provision under review, although it does not come within the definition of a railroad contained in Section 3098. It would seem to follow, therefore, that the chapter in the Code headed by Section 3098 and the constitutional section are independent of each .other.

In *Taylor v. Prairie Co.,* 61 Fla., 455; 54 South., 904, it is held that a phosphate mining company operating trolley engines and cars for hauling phosphate is not a railroad within the statute.

Many cases cited to sustain the contention of the plaintiff may be easily distinguished by the phraseology of the particular constitutional or statutory provision. In Alabama, for instance, the application is to injuries sustained on account of the negligence of any servant in charge of a train on a railway, which of course would apply to a logging train as well as to a regular railroad train. In Indiana the application is to companies operating a railroad. In Massachusetts the application is to injuries sustained by the negligence of a person in the master's employ who is in charge of an engine or train on a railroad. In New York the application is to injuries sustained by the negligence of any employee having control and direction of the movement of cars. In Texas the application is to corporations operating a railroad. In Wisconsin the application is to any company operating a railroad.

Many others could be cited, but these are sufficient to indicate the controlling distinction between the laws of such States and our own, based on the one side upon the principle of the character of the employment, and on the other upon the character of the corporation. This distinction is emphasized in our Constitution by the provision authorizing the General Assembly to extend the remedies to any other class of employees; that is, to employees of other than railroad corporations.

Mr. Justice Watts concurs in the result.